14030

TOLBERT v. SOUTHERN MUTUAL LIFE INS. CO. *ET AL.*

(179 S. E., 308)

*Mr. Steve C. Griffith,* for appellant,

*Mr. Alan Johnstone,* for respondent,

March 27, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

We gather the following undisputed facts from the record for appeal: On August 1, 1929, the Pioneer Insurance Company issued to the defendant the Improved Order of Redmen, a fraternal organization, of which one John Tolbert was a member, a group policy, and thereby insured such members of the Redmen who elected in writing to contribute to the cost of the insurance. In 1931 Tolbert obtained in this manner $1,000.00 on his life; the plaintiff being named as the beneficiary in the certificate issued him by the insurer. In February, 1932, the defendant Southern Mutual Life Insurance Company assumed and guaranteed the payment of the group policy and the certificates issued under it. The liability of the company was conditioned upon the payment of the premiums as provided in the policy, which allowed a grace period of 31 days after the due date, and upon the insured member remaining in good standing in the Order of Redmen. In September, 1932, Tolbert died; proofs of his death were filed with the company as required; but payment of the insurance was refused. This action was then brought to enforce collection.

The defendants made separate answers. The Improved Order of Redmen denied all liability, alleging that the taking of the insurance was optional with the members of the order, and that the policy in question was an independent contract between the insured and the insurer. The defendant company alleged that any liability under the policy was its sole liability, and that it had refused payment because the insurance had lapsed for the nonpayment of premiums, and for the further reason that the insured was not in good standing in the order at the time of his death.

On trial of the case the Court granted a nonsuit as to the defendant Order of Redmen, but overruled the company's motions for a nonsuit and for a directed verdict. The jury found for the plaintiff, and, from judgment entered on the verdict, this appeal is taken.

The appellant, by its exceptions, charges the trial Judge with error in the following particulars: (1) In the admission of certain testimony; (2) in refusing defendant's motions for a nonsuit and for a directed verdict; and (3) in his instructions to the jury.

As to the first contention, it appears that the premium on the policy in question was $1.00 per month, payable in advance, a grace period of 31 days, as we have indicated, being allowed. It also appears that the company authorized a member of the lodge to collect for it the premiums when due. On June 29, 1932, a man named Le Mons, who was then the agent of the company for that purpose, and who also collected the lodge dues, wrote the insured the following letter: "Please send me by post office money order $2.00 for insurance and $1.25 for Redmen dues. Please mail at once as time is due for month's ins. Thanks." Tolbert complied with this request on the following day by remitting the $3.25. While Le Mons admitted having duly received this money, he claimed that the $2.00 for insurance covered the premiums for the months of May and June, and was intended as payment by Tolbert of money which he (the

agent) had personally advanced for the payment of the premiums for those two months. Nothing of this, however, is indicated in the notice. In July, 1932, J. C. Ammons succeeded Le Mons as the collector of the lodge dues, and also at the same time became the authorized representative of the insurance company for the collection of premiums on certificates held by the members of the order.

In this situation, in August, 1932, R. N. Tolbert, a son of the insured, went to Union, as stated by him, for the purpose of paying any amount that might be owing by his farther as insurance premiums and lodge dues. He testified that, upon arriving there, he inquired for Le Mons and was told that he had been burned out and left town. It is not disclosed whether Tolbert knew that Ammons was at the time the company's agent for the collection of premiums, and also collector of dues for the lodge. In any event, not being able to find Le Mons, he went to see L. B. Godshall, the treasurer of the order, and who was, as it happened, the employer of Ammons. Tolbert stated, over appellant's objection, that he told Godshall that he wanted to pay all of his father's insurance premiums and lodge dues, and, upon being informed by him that the amount was $2.25—$1.00 for insurance and $1.25 for dues—he gave him a $10.00 bill, out of which he took the $2.25. It is admitted that Godshall turned over this money to Ammons and that it was received by him.

The appellant contends that this testimony of Tolbert, which we have stated in substance, was inadmissible, for the reason that there was no proof that Godshall, with whom the transaction and conversation were had, was an agent of the company.

It is agreed that the sum of $1.25 was payable quarterly as dues by a member of the lodge. Le Mons admitted, on cross-examination, that he had received from the insured in 1930 and 1931 certain payments of such dues for which no accounting had been made by him.

A receipt introduced in evidence showed payment to April 1, 1932, and it appears that the one made on June 30th, was for the quarter ending on that day. It seems, therefore, that the payment made by Tolbert in August to Godshall of $1.25 for dues was for the quarter ending September 30th. There appears to be no serious dispute about this. With regard to the insurance, however, the contention is that there is no proof of payment of the premiums for July and August, and that therefore the policy lapsed before the death of the insured in September. Le Mons testified that, while he asked Tolbert for the July premium in the letter of June 28th, he put the $2.00 into his own pocket because Tolbert owed him for the premiums on his insurance for May and June, which had theretofore been paid by the witness for the insured. We think, however, in view of the manner in which Le Mons collected premiums and dues, and of his admitted failure to account for certain moneys that were paid him by the insured, it was for the jury to determine the truth of the matter and to say whether the money so paid him covered the premium for the month of July.

Ammons stated that he used $1.00 of the $2.25 turned over to him by Godshall to pay an assessment due by the insured to the lodge. The record, however, does not disclose that the deceased had notice of any such assessment or that any demand had been made for its payment. Was it reasonably inferable from all the testimony that only $1.00 was due the company as premiums at the time that Tolbert paid Godshall the $2.25, and that, when the money was turned over to Ammons by Godshall, it was understood by the former as intended to cover the insurance premium for the month of August? We think so. In other words, despite the denials of Godshall and Ammons that the money was paid or received as claimed by Tolbert, we are inclined to the view, and so hold, that, when all the evidence in the case relating to the collection of lodge dues and in-

surance premiums is read together, this testimony of Tolbert was so connected up with the matter that it was properly admissible as a link in a chain of circumstances for the consideration of the jury in their determination of the question of the forfeiture claimed by the defendant. The exceptions raising this question are therefore overruled.

The motions for a nonsuit and for a directed verdict were made on the ground that the evidence showed that the policy, at the time of the death of the insured, had lapsed for the nonpayment of premiums. It follows from the conclusion reached in our disposition of the first question that this assignment of error is without merit.

As to the error complained of with respect to the Court's charge, we need consider only the appellant's contention that there should be a new trial because of the failure of the presiding Judge to instruct the jury that the plaintiff was required to prove her case by the preponderance of the evidence; the additional contention as to what was charged being disposed of by what we have already said.

It is true that the appellant was entitled to have the jury so instructed; but we do not think that the error resulted in any harm as contended. The contest was directed mainly to appellant's affirmative defense, that the policy had lapsed before the death of Tolbert because of his failure to pay the premiums as required by his certificate of insurance. This defense the defendant company was required to prove by the greater weight of the evidence. Besides, the failure of Judge Townsend to charge as complained of was clearly an inadvertence on his part, and counsel should have called his attention to the oversight. On the whole, we do not think that this Court, in the circumstances, would be warranted in ordering a new trial on this ground.

The judgment of the Circuit Court is affirmed.

Messrs. Justices Carter and Bonham and Messrs.

344

Acting Associate Justices E. C. Dennis and C. J. Ramage, Circuit Judges, concur.